CATHERINE WYMAN, APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 50218

October 8, 2009 217 P.3d 572

*Dennis E. Widdis*, Reno; *Martin H. Wiener*, Reno, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *Richard A. Gammick*, District Attorney, and *Joseph R. Plater*, Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, HARDESTY, C.J.:

In 2007, a jury convicted appellant Catherine Wyman of second-degree murder for the 1974 killing of her three-year-old adopted son. In this opinion, we address two of the issues that Wyman presents on appeal.

First, we address Wyman's challenge to the district court's denial of her motion to dismiss the complaint based on the pre-indictment delay. After establishing that this court will review a district court's denial of a motion to dismiss based on pre-indictment delay for an abuse of discretion, we conclude that the district court did not abuse its discretion by refusing to dismiss the complaint because Wyman failed to demonstrate that she was prejudiced by the delay and that the State intentionally delayed filing the complaint to gain a tactical advantage over Wyman. Hence, we conclude that this challenge does not warrant reversal.

Second, we consider Wyman's challenge to the district court's denial of her request for a certificate of materiality to obtain the out-of-state mental health records of the State's primary witness, under Nevada's Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings, codified in NRS 174.395 through 174.445. In concluding that Nevada's Uniform Act applies to subpoenas duces tecum for material books and records that include an ancillary request for the appearance of an out-of-state witness, we further conclude that the term "material," as used in NRS 174.425(1) (which authorizes a criminal defendant in one jurisdiction to subpoena a "material witness" from another jurisdiction to testify in a criminal matter), refers to evidence that has some logical connection with the facts of consequence or the issues presented in the case. Turning to the merits of Wyman's challenge, we conclude that the district court abused its discretion by denying Wyman's request for a certificate of materiality to obtain the State's primary witness's out-of-state mental health records. Because we conclude that this error was not harmless, we reverse Wyman's judgment of conviction.[1]

---

[1]In addition to the specific challenges addressed in this opinion, Wyman also raises separate challenges relating to the admission of her statements to police and the admission of witness testimony regarding prior statements that

## FACTS AND PROCEDURAL BACKGROUND

In the early evening of August 10, 1974, Wyman brought her three-and-one-half-year-old adopted son, J.W., to St. Mary's Hospital in Reno, Nevada. Wyman told doctors that J.W. had fallen out of a lawn chair that morning, striking his head on the sidewalk, and that he complained of abdominal pain and became lethargic thereafter.

At the hospital, J.W. was examined by Dr. William Buntain, a pediatric surgeon. The examination revealed that J.W. had multiple bruises throughout his body, including on his forehead, chin, face, chest, legs, back, abdomen, and genitals—all of which were at different healing stages. J.W. also had a head concussion and scratch marks on his neck. Dr. Buntain inserted a catheter in J.W.'s neck area in order to rehydrate him, whereupon J.W. ceased breathing and failed to respond to two epinephrine injections. After 20 minutes of trying to resuscitate J.W., doctors terminated their efforts as J.W. was unresponsive.

Dr. Donald Olson, a neurosurgeon who also examined J.W., suspected child abuse, noting that he "would recommend further photographs for documentation of these multiple bruises and would significantly doubt that this was a minor injury, as suggested by the parents." Also suspicious of child abuse, Dr. Buntain requested that the police be contacted and instructed that the Washoe County coroner perform an autopsy to determine the precise cause of death. The pathologist's findings revealed that J.W. had died from a "transection of the jejunum with generalized peritonitis," meaning, a part of J.W.'s small intestine was completely transected so that the contents of J.W.'s small bowel, liver, gallbladder, and stomach had emptied into his abdomen.

The coroner who performed the examination in 1974 concluded that J.W.'s death was the result of an accidental fall from a lawn chair. However, the Washoe County coroner who served from 1979 to 2006 did not agree with those findings, stating, "The mode of injury is inconsistent with the [accidental fall from a lawn chair] finding." Neither Wyman nor anyone in her family was prosecuted for J.W.'s death at that time.

Over 30 years later, on March 10, 2005, Julie Bader-Dunn, Wyman's adult daughter, telephoned the Sparks Police Department (Sparks P.D.) alleging that Wyman had murdered J.W. Dunn reported to police that Wyman severely abused J.W. and that Dunn

Wyman made. Additionally, Wyman challenges the district court's denial of her motion to continue trial and rejection of her proffered flight instruction. Because we reverse Wyman's judgment of conviction based on the district court's refusal to issue the certificate of materiality, we do not address Wyman's other challenges.

had witnessed Wyman kicking J.W. in the stomach on the morning of his death. Dunn explained to police that she had originally revealed Wyman's killing of J.W. when she commenced weekly treatment with a marriage and family therapist in 1995 to address marital problems.

In the course of making her allegations to police, Dunn relayed that she meets with a psychiatrist once a month who prescribes her medication. Dunn also stated that she has attempted to commit suicide several times since 1974; one attempt included her consumption of Drano, a household cleaning product. Dunn further informed police that she had a mental breakdown in 2005 and that she was currently consulting a therapist once per week, in addition to the monthly psychiatrist meetings, in order to "deal with all the issues and so that [she is] a strong witness" for the State. Throughout her contact with police, Dunn relayed additional information, including a memory that she "recalled" during a more recent session with her therapist. Dunn gave her therapist permission to speak with detectives, reasoning, "[the therapist] has been treating me for the major depression and guilt that I have carried for all these years." One year after Dunn made her initial accusations to police, detectives from Sparks P.D. arrested Wyman.

On May 30, 2006, approximately 32 years after J.W.'s death, a criminal complaint was filed against Wyman. The following month, Wyman was charged, via indictment, with one count of open murder, and a second count of child abuse for the 1974 death of J.W. The child abuse charge was subsequently dropped.

Prior to trial, Wyman filed a motion to dismiss the complaint due to the pre-indictment delay of 32 years. Wyman maintained that because the State failed to indict her in 1974 when J.W. died, and because there is no new forensic evidence in the case, the State did not have a justifiable reason for the delay. The district court denied the motion, concluding that both the State and the defense were prejudiced by the delay. While the court noted that witnesses might have died or moved away after 32 years, the court concluded that Wyman failed to demonstrate that the State lost evidence or intentionally delayed the prosecution in order to gain a tactical advantage. Due to the lack of prejudice suffered by Wyman and the lack of intent to delay by the State, the district court denied Wyman's motion.

In addition, at various times during the proceedings, Wyman moved the district court for a certificate of materiality, under Nevada's Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings, to obtain evidence that was located in California. Wyman sought the certificate in order to obtain Dunn's mental health records that were kept in California, where Dunn's marriage and family therapist and psychiatrist were

located. Wyman argued that because Dunn was the State's primary witness, the out-of-state evidence was material to her ability to refute Dunn's allegations. In making her materiality argument, Wyman emphasized that Dunn was the State's only witness who identified Wyman as being responsible for J.W.'s death. For her proffers, Wyman directed the district court to the various statements that Dunn made to police concerning her mental health issues and treatment and the fact that Dunn's allegations first transpired during sessions with her therapist. As evidenced by Dunn's own statements, Wyman argued, Dunn intertwined the allegations with her treatment, therefore rendering the status of Dunn's mental health material. And since Wyman was otherwise unable to obtain Dunn's mental health information, Wyman argued that she was prejudiced because she was unable to defend against the State's allegations.

The district court denied the motions, concluding that Wyman failed to demonstrate with sufficient particularity that Dunn's out-of-state mental health records would produce any information that would prove to be helpful to her case and that her defense would be prejudiced without them.[2]

On appeal, Wyman challenges the district court's denial of her motion to dismiss the complaint for pre-indictment delay and the denial of her request for a certificate of materiality to obtain Dunn's mental health records from California.

## DISCUSSION

In this opinion, we address two of the issues that Wyman raises on appeal. First, we address Wyman's challenge to the district court's denial of her motion to dismiss the complaint based on the pre-indictment delay. Initially, we conclude that the court will review challenges to pre-indictment delay for an abuse of discretion. We conclude that because Wyman failed to demonstrate with adequate specificity that she was prejudiced by the delay and that the State intentionally delayed filing the complaint to gain a tactical advantage over Wyman, the district court did not abuse its discretion by refusing to dismiss the complaint. Therefore, we conclude that this challenge does not warrant reversal.

Second, we consider Wyman's challenge to the district court's denial of her request for a certificate of materiality to obtain the out-of-state mental health records of the State's primary witness, under Nevada's Uniform Act to Secure the Attendance of Witnesses From

---

[2]Wyman also sought a certificate of materiality to obtain Dunn's prescription medication records, which the district court initially denied. However, after Dunn testified for the State, the district court reconsidered its previous ruling and granted Wyman's request for that certificate, explaining that Dunn's testimony was singular and her demeanor warranted further investigation, stating, "[The court] saw her testify. There was something going on there. And [the court] will grant it to that extent."

Without a State in Criminal Proceedings, codified in NRS 174.395 through 174.445.

Prior to turning to the merits of Wyman's challenge, however, we must determine whether Nevada's Uniform Act, which authorizes a criminal defendant in one jurisdiction to subpoena a "material witness" from another jurisdiction to testify in a criminal matter, extends to subpoenas duces tecum for material out-of-state books and records. We continue to follow the holding in *Atlantic Commercial v. Boyles*, 103 Nev. 35, 732 P.2d 1360 (1987), *abrogated on other grounds by Executive Mgmt. v. Ticor Title Ins. Co.*, 118 Nev. 46, 38 P.3d 872 (2002), and conclude that Nevada's Uniform Act applies to subpoenas duces tecum that include an ancillary request for the appearance of an out-of-state witness.

Having concluded that Nevada's Uniform Act extends to subpoenas duces tecum that are accompanied by an ancillary request for the appearance of an out-of-state witness, we must next determine the meaning of the term "material" as used in Nevada's Uniform Act, specifically NRS 174.425(1) (which provides that a person in this State may compel the attendance of an out-of-state witness if they are "a material witness in a prosecution pending in a court of record in this State"), in relation to out-of-state evidence requested in a subpoena duces tecum. After considering the parties' arguments regarding the meaning of the term "material" for purposes of Nevada's Uniform Act, we determine that the rules of statutory interpretation are the proper mechanisms by which to resolve the issue. As dictated by those rules, we conclude that the term "material," as used in Nevada's Uniform Act, has a plain meaning, which includes evidence that has some logical connection with the facts of consequence or the issues presented in the case.

Turning to the merits of Wyman's challenge to the district court's denial of her request for a certificate of materiality, we determine that substantial evidence does not support the district court's findings. Therefore, we conclude that the district court abused its discretion by denying Wyman's request for a certificate of materiality to obtain the State's primary witness's out-of-state mental health records. Because we conclude that this error was not harmless, we reverse Wyman's judgment of conviction.

We address each of Wyman's challenges below in turn.

*Pre-indictment delay of 32 years*

Wyman challenges the district court's denial of her motion to dismiss the complaint based on the pre-indictment delay of 32 years. She argues that the delay hindered her ability to defend against the charges because evidence that bore upon the existence of the crime and the identity of possible perpetrators was lost, thus violating her due process rights. We reject Wyman's assignment of error.

*Standard of review*

This court has not expressly stated the applicable standard of review when considering a district court's denial of a defendant's motion to dismiss a complaint based on pre-indictment delay. Some jurisdictions have treated the issue of pre-indictment delay as a mixed question of law and fact, determining that whether a defendant's due process rights are violated is a question of law, but the lower court's factual findings are generally binding on appeal. *See, e.g., State v. Knickerbocker*, 880 A.2d 419, 424 (N.H. 2005); *State v. Williams*, 125 P.3d 93, 96 (Or. Ct. App. 2005); *State v. Lee*, 602 S.E.2d 113, 117 (S.C. Ct. App. 2004). Other jurisdictions, including the United States Court of Appeals for the Ninth Circuit, have adopted an abuse of discretion standard in reviewing pre-indictment delay challenges. *See, e.g., U.S. v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007); *State v. Gonzales*, 156 P.3d 407, 411 (Alaska 2007); *People v. Morris*, 756 P.2d 843, 866 (Cal. 1988), *disapproved on other grounds by In re Sassounian*, 887 P.2d 527, 532 n.5 (Cal. 1995); *People v. Herndon*, 633 N.W.2d 376, 391 (Mich. Ct. App. 2001). After examining the alternative approaches to the issue, we are persuaded that the United States Court of Appeals for the Ninth Circuit and similar jurisdictions employ the better approach primarily because the test for analyzing pre-indictment delay challenges is factually intense. *See Jones v. State*, 96 Nev. 240, 242, 607 P.2d 116, 117 (1980). Accordingly, we adopt an abuse of discretion standard of review. Under this standard, we will reverse a district court's denial of a defendant's request that the charges against him or her be dismissed based on pre-indictment delay when " 'the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason.' " *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (quoting *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001)).

*Two-prong test for pre-indictment delay challenges*

A challenge by which a defendant seeks to have the complaint dismissed due to pre-indictment delay is rooted in the Due Process Clause of the Fourteenth Amendment, and Article 1, Section 8(5) of the Nevada Constitution. This constitutional guarantee protects a defendant from lengthy "delay[s] between the commission of an offense and the initiation of prosecution."[3] *United States v. Lovasco*,

---

[3]Generally, any delay between the commission of an offense and an indictment is limited by statutes of limitations. *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *Jones v. State*, 96 Nev. 240, 241, 607 P.2d 116, 117 (1980). However, murder does not have an attendant statute of limitations. Therefore, the Due Process Clause is not all-inclusive of a defendant's rights, and courts must apply a two-prong test. *Jones*, 96 Nev. at 242, 607 P.2d at 117.

431 U.S. 783, 784 (1977). To succeed on a due process challenge to pre-indictment delay, the accused must make two requisite showings: (1) that he or she suffered actual, nonspeculative prejudice from the delay; and (2) that the prosecution intentionally delayed bringing the charges in order to gain a tactical advantage over the accused, or that the prosecution delayed in bad faith. *Id.*; *U.S. v. DeGeorge*, 380 F.3d 1203, 1210-11 (9th Cir. 2004).

With respect to the first required showing, Wyman argues that she suffered prejudice because some witnesses are difficult to locate, and important neighbors, family members, and the coroner in 1974 are now deceased. Wyman argues that these potential witnesses may have been able to testify as to whether they saw or heard any indicia of abuse that occurred at the Wyman home. Wyman does not specifically allege what any of the potential witnesses would have testified. Because Wyman fails to make a particularized showing of actual, nonspeculative prejudice resulting from the delay, we reject Wyman's claim of prejudice.

As the Ninth Circuit has succinctly stated, "[W]hen a defendant fails to make a specific showing as to what a [lost or] deceased witness would have said, any argument of prejudice is pure conjecture." *U.S. v. Corona-Verbera*, 509 F.3d 1105, 1113 (9th Cir. 2007). "[A]llegations of prejudice 'must be supported by non-speculative proof.'" *Id.* (quoting *U.S. v. Doe*, 149 F.3d 945, 949 (9th Cir. 1998)). Because Wyman failed to specifically demonstrate how the unavailability of the lost or deceased witnesses prejudiced her defense, or how testimony from such witnesses would have benefited her defense, we conclude that the district court did not abuse its discretion by denying Wyman's motion to dismiss the complaint. *See id.*; *see also State v. Delisle*, 648 A.2d 632, 644 (Vt. 1994) (where that court rejected the defendant's claim of prejudice as a result of the nearly 14-year pre-indictment delay because, while one witness had died, the defendant failed to demonstrate what the deceased witness would have testified had he been alive).

Although our conclusion that Wyman failed to demonstrate actual prejudice makes it unnecessary for us to evaluate the second prong of the test, we further conclude that Wyman failed to meet the second prong of the test—that the State used the delay to gain a tactical advantage or delay the indictment in bad faith. In particular, we conclude that Wyman failed to demonstrate that the delay "'offend[ed] . . . fundamental conceptions of justice.'" *Corona-Verbera*, 509 F.3d at 1112 (internal quotations omitted) (quoting *U.S. v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989)). The record is devoid of any indication that the State's delay was an intentional device that the State utilized "'to gain tactical advantage'" over

Wyman. *See United States v. Lovasco*, 431 U.S. 783, 795 (1977) (quoting *United States v. Marion*, 404 U.S. 307, 324 (1971)); *see also Jones v. State*, 96 Nev. 240, 242, 607 P.2d 116, 117 (1980). As the district court noted, it is likely that the State suffered from the delay as well. For these reasons, we conclude that Wyman's pre-indictment delay challenge lacks merit.

*Certificate of materiality to obtain Dunn's out-of-state mental health records*

Wyman also challenges the district court's denial of her request for a certificate of materiality to obtain Dunn's out-of-state mental health records under Nevada's Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings. After reviewing the record, we conclude that the district court abused its discretion by denying Wyman's request. In coming to this conclusion, we address the breadth of Nevada's Uniform Act regarding out-of-state evidence, and the standard of materiality that the moving party must demonstrate in requesting the certificate, as required by NRS 174.425(1).[4]

*Nevada's Uniform Act*

Under the Sixth Amendment to the United States Constitution, a criminal defendant is entitled to "compel the production of witnesses to testify on his or her behalf." *Wilson v. State*, 121 Nev. 345, 366, 114 P.3d 285, 299 (2005); U.S. Const. amend. VI. Due to jurisdictional limitations, the Legislature enacted Nevada's Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings, codified in NRS 174.395 through 174.445, to authorize Nevada courts to subpoena a citizen of another state for purposes of testifying in a criminal matter. *Wilson*, 121 Nev. at 366, 114 P.3d at 299. However, there are some restrictions

---

[4]NRS 174.425(1) grants district courts authority to issue a certificate of materiality to obtain evidence from another jurisdiction. It provides:

> If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this State, is a material witness in a prosecution pending in a court of record in this State, or in a grand jury investigation which has commenced or is about to commence, a judge of such a court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. The certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this State to ensure his attendance in this State. This certificate must be presented to a judge of a court of record in the county in which the witness is found.

*Id.*

to a party's right to compel the production of an out-of-state witness. *Id.* These restrictions require the moving party to demonstrate that the witness is material and that the moving party would be prejudiced absent the court's issuance of the certificate. *Id.* at 368, 114 P.3d at 300; *see Bell v. State*, 110 Nev. 1210, 1213-15, 885 P.2d 1311, 1314-15 (1994). Hence, this court reviews a district court's refusal to issue a certificate summoning the attendance of an out-of-state witness for an abuse of discretion. *Wilson*, 121 Nev. at 366, 114 P.3d at 299.

### Nevada's Uniform Act and subpoenas duces tecum

While the Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings clearly allows adopting jurisdictions to compel "material witness[es]" from other jurisdictions to testify in a criminal prosecution or before a grand jury, *see, e.g.*, NRS 174.425(1); *see also* NRS 174.405(2); NRS 174.415,[5] jurisdictions have questioned whether the Uniform Act permits courts to compel the production of books and records via subpoenas duces tecum. Jay M. Zitter, J.D., Annotation, *Availability under Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings of Subpoena duces tecum*, 7 A.L.R.4th 836 (1981). Although Nevada and several other jurisdictions have included within their acts a statute that instructs courts to interpret and construe the Uniform Act to "make uniform the law of the states which enact [it]," *see* NRS 174.445; Fla. Stat. Ann. § 942.05 (West 2006); Md. Code Ann., Cts. & Jud. Proc. § 9-305 (LexisNexis 2006); Mass. Ann. Laws ch. 233, § 13D (LexisNexis 2000); Mich. Comp. Laws Ann. § 767.95 (West 2000); N.Y. Crim. Proc. Law § 640.10 (McKinney 1995); Wash. Rev. Code Ann. § 10.55.110 (West 2002), jurisdictions have reached different conclusions on the issue of whether the Uniform Act extends to subpoenas duces tecum for books and records.

The issue arises because the Uniform Act speaks in terms of an out-of-state witness receiving a "summons." NRS 174.425(2); NRS 174.435. "Summons" is defined in NRS 174.405(2) to "include a subpoena, order or other notice requiring the appearance of a witness." A minority of courts have read the reference to "requiring the appearance of a witness" as limiting "subpoena" to subpoenas for testimony not documents, reasoning that, had the Legislature intended to include subpoenas duces tecum, it would have drafted the

---

[5]NRS 174.405(2) defines "summons" to "include a subpoena, order or other notice requiring the appearance of a *witness*" (emphasis added), and NRS 174.415 and 174.425 specifically deal with the procedures by which a criminal defendant can summon a witness in this state to testify in another state and vice versa—without discussion as to books or records.

statute to include them. *In re Grothe*, 208 N.E.2d 581, 586 (Ill. App. Ct. 1965) (quoting Ill. Rev. Stat. ch. 38, § 156-1, now 725 Ill. Comp. Stat. Ann. 220/1 (West 2008)).[6]

On the other hand, courts that construe the Uniform Act liberally, which represent the majority view, have concluded that it is reasonable to afford protection to reach documents as well as witnesses, reasoning that the term "subpoena" can include documents. *See, e.g., Application of Grand Jury of State of N.Y.*, 397 N.E.2d 686, 689 (Mass. App. Ct. 1979) (reasoning that the meaning of the term " 'sub poena' . . . certainly ha[s] no relation whatever to process [but that] [c]ustom and tradition have, however, made the words synonymous with process of a certain kind" and that it would be irrational to conclude that the term excludes either subpoena duces tecum or subpoena ad testificandum); *In re Saperstein*, 104 A.2d 842, 846 (N.J. Super. Ct. App. Div. 1954) ("In view of . . . the fact that the uniform act was enacted in aid of comity between states to assist the orderly and effectual administration of justice and prosecution of criminal conduct, we conclude that the Legislature . . . was aware of the case law holding the term 'subpoena' to embrace 'subpoena duces tecum' " and had it intended to exclude such subpoenas from the act, it would have done so.)

This court briefly discussed the issue in *Atlantic Commercial v. Boyles*, 103 Nev. 35, 732 P.2d 1360 (1987), *abrogated on other grounds by Executive Mgmt. v. Ticor Title Ins. Co.*, 118 Nev. 46, 38 P.3d 872 (2002). The *Boyles* court addressed whether a foreign court could issue a subpoena duces tecum for a Nevada bank to produce a corporation's Nevada bank records without obtaining jurisdiction in Nevada. *Id.* at 37, 732 P.2d at 1362. This court stated that Nevada's Uniform Act "provides a method whereby jurisdiction to serve a subpoena duces tecum issued by a court in a foreign jurisdiction may be properly obtained through a Nevada court." *Id.* at 39, 732 P.2d at 1363. This court went on to state that although "[t]he language of NRS 174.415 [NRS 174.425's counterpart for summoning a witness in this State to appear in another state] specifically provides only for subpoenas requesting witnesses for out-of-state criminal proceedings," it "arguably would apply to a subpoena duces tecum for production of documents." *Id.* In concluding that the foreign court lacked jurisdiction, this court held that if the foreign court still wanted to obtain the party's bank records that were located in Nevada, it must utilize Nevada's Uniform Act to do so. *Id.* We reaffirm the holding in *Boyles*.

---

[6]We recognize that after *In re Grothe*, 208 N.E.2d 581, was published, the Illinois Legislature amended Illinois Revised Statute chapter 38, section 156-1 to include a parenthetical to its definition of the term "summons." The statute now provides that a summons "shall include a subpoena (*both* subpoena ad testificandum and subpoena duces tecum)." 725 Ill. Comp. Stat. Ann. 220/1 (West 2008) (emphasis added).

Remaining in line with the majority of jurisdictions, we reiterate that Nevada's Uniform Act extends to subpoenas duces tecum. Like the appeals court of Massachusetts, we are convinced that the term "subpoena," as used in NRS 174.405(2), includes subpoenas duces tecum. While NRS 174.425 sets forth the procedures by which a citizen of Nevada can "summon" a witness from another jurisdiction to testify in a criminal proceeding, NRS 174.405(2) defines "summons" as including a *"subpoena,* order or other notice requiring the appearance of a witness." (Emphasis added.) Because the ordinary meaning of "subpoena" includes both a subpoena ad testificandum and a subpoena duces tecum,[7] *see Black's Law Dictionary* 1467 (8th ed. 2004), we determine, as indicated in *Boyles,* that it is reasonable to extend NRS 174.425(1) to requests for material out-of-state books and records that have an ancillary request for the appearance of a witness.

In this case, Wyman seeks the issuance of a subpoena duces tecum for Dunn's out-of-state mental health records. At oral argument, Wyman specified that she sought the appearance of a custodian of records attendant to Dunn's records. Because Wyman sought out-of-state records via a subpoena duces tecum that had an ancillary request for the appearance of an out-of-state witness, we conclude that Wyman's certificate of materiality request fell within the purview of Nevada's Uniform Act.

*This court examines two elements in determining whether the district court abused its discretion by denying a request for a certificate of materiality*

This court has established that the inquiry into whether a district court abused its discretion by denying a request for a certificate of materiality is twofold. *See Wilson v. State,* 121 Nev. 345, 367-68, 114 P.3d 285, 300 (2005). First, this court must determine whether substantial evidence supports the district court's findings that the moving party failed to demonstrate that the evidence is material to the defendant's case. Second, we must determine whether substantial evidence supports the district court's findings that the moving party failed to demonstrate that the absence of the evidence prejudiced the defense. *Id.*

Wyman argues that the district court erroneously concluded that she failed to demonstrate her burden of materiality and prejudice under Nevada's Uniform Act. Wyman maintains that she effectively established that Dunn's mental health records were material to her

---

[7]*Black's Law Dictionary* defines "subpoena" as "[a] writ commanding a person to appear before a court or other tribunal, subject to a penalty for failing to comply." 1467 (8th ed. 2004). That dictionary continues to define "alias subpoena," "deposition subpoena," "subpoena ad testificandum," and "subpoena duces tecum" under the general definition of "subpoena." *Id.*

case for various reasons, including: Dunn was the State's only witness who named Wyman as the person responsible for J.W's death, Dunn's allegations were cultivated during her mental health treatment, Dunn admitted to being suicidal in the past, and Dunn had a mental breakdown the same year that she related her allegations. Moreover, in light of Dunn's questionable mental health stability, Wyman argues that her defense was prejudiced in the absence of Dunn's records because she was unable to fully defend herself against the State's case.

The State maintains that the district court properly denied Wyman's request for Dunn's mental health records because Wyman supports her materiality claim with only conclusory facts, rather than actual knowledge that Dunn's mental health records contain information that would assist Wyman in her defense. The State also notes that the district court did not err in rendering its decision because Dunn's mental health records are privileged and Dunn has not waived that privilege. Yet, even if the district court abused its discretion with respect to Wyman's materiality showing, the State further argues, Wyman has failed to demonstrate that her defense was prejudiced.

### Materiality

Although Nevada's Uniform Act authorizes certificates of materiality upon a sufficient showing that the evidence is "material," NRS 174.425(1), the Act does not define the term "material," and this court has not expressly defined what constitutes a sufficient materiality showing. Instead, this court has generally instructed that the determination of a witness's materiality lies with the judge after a hearing, *State v. Fouquette*, 67 Nev. 505, 516, 221 P.2d 404, 410 (1950), and that "[a] witness is not material merely because one party designates that witness as such." *Bell v. State*, 110 Nev. 1210, 1213-14, 885 P.2d 1311, 1314 (1994). Absent controlling precedent, we must determine what evidence is "material" under NRS 174.425(1).

The State proposes that this court adopt a materiality test that balances the defendant's right to a fair trial and the witness's interest in confidentiality with respect to privileged records. The State relies on *People v. Stanaway*, in which the Michigan Supreme Court held, "[W]here a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense," the court must conduct an in camera review of the potentially privileged records to determine whether they contain any evidence "reasonably necessary, and therefore essential," to the defense. 521 N.W.2d 557, 562 (Mich. 1994). While this argument might prove persuasive in circumstances in which Nevada courts are presented with an out-of-state certificate of materiality for evidence

located in Nevada, we conclude that the issue of privilege is not part of the materiality consideration because it is not proper for Nevada courts to consider whether out-of-state evidence is privileged. The issue of privilege is a matter properly considered by the jurisdiction in which the evidence is located. *See* NRS 174.425(1) (providing that upon the district court issuing the certificate of materiality, the "certificate must [then] be presented to a judge of a court of record in the county in which the [evidence] is found").

Wyman, on the other hand, argues that this court should adopt a materiality test that mirrors the materiality test under *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the United States Supreme Court held, in relevant part, that the government must disclose exculpatory evidence that is material to a defendant's guilt or punishment. *Id.* at 87. This court has examined materiality in the *Brady* context and has held that there must "exist[ ] a reasonable probability that the claimed evidence would have affected the judgment of the trier of fact, and thus the outcome of the trial." *Roberts v. State*, 110 Nev. 1121, 1132, 881 P.2d 1, 8 (1994), *overruled on other grounds by Foster v. State*, 116 Nev. 1088, 13 P.3d 61 (2000). Aside from our initial concern that the *Brady* materiality test is too narrow to apply in these circumstances, we determine that because NRS 174.425(1) specifically employs the term "material" when discussing what class of evidence is subject to a certificate of materiality, it is more appropriate to examine the term as used by that particular statute.

In examining a statutory counterpart to NRS 174.425(1), one Florida Court of Appeals looked to the plain meaning of the term "material," as prescribed by dictionary definitions, and held that, for purposes of the Uniform Act, "a material witness is '[a] witness who can testify about matters having some logical connection with the consequential facts, esp[ecially] if few others, if any, know about these matters.'" *State v. Bastos*, 985 So. 2d 37, 41, 43 (Fla. Dist. Ct. App. 2008) (first alteration in original) (quoting *Black's Law Dictionary* 1634 (8th ed. 2004)). We are persuaded that Florida took the correct approach to this issue by treating it as one of statutory construction. Thus, we employ the rules of statutory interpretation to resolve the meaning of the term "material" for evidentiary purposes under Nevada's Uniform Act.

 ██ █

This court has established that when it is presented with an issue of statutory construction, it should give effect to the statute's plain meaning. *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004). When this court interprets the plain language of a statute, the court "presume[s] that the Legislature intended to use words in their usual and natural meaning." *McGrath v. State, Dep't of Pub. Safety*, 123 Nev. 120, 123, 159 P.3d 239, 241 (2007). Thus, when the lan-

guage of a statute is plain and unambiguous, such that it is capable of only one meaning, this court should not construe that statute otherwise. *Nevada Power Co. v. Public Serv. Comm'n*, 102 Nev. 1, 4, 711 P.2d 867, 869 (1986). Despite the fact that the Legislature did not define ''material'' in Nevada's Uniform Act, we determine that the term, as used in NRS 174.425(1), has a plain meaning.

*Black's Law Dictionary* defines ''material,'' in pertinent part, as, ''[h]aving some logical connection with the consequential facts < material evidence > .'' 998 (8th ed. 2004). Likewise, ''material evidence'' is defined as ''[e]vidence having some logical connection with the facts of consequence or the issues.'' *Id.* at 598. We are convinced that, in enacting Nevada's Uniform Act, the Legislature intended that the term ''material'' be used according to its ordinary meaning, as defined by dictionary definitions. *See McGrath*, 123 Nev. at 123, 159 P.3d at 241. Therefore, we hold that, for purposes of Nevada's Uniform Act, the term ''material'' evidence connotes evidence that is logically connected with the facts of consequence or the issues in the case.

■■■

Applying this definition of ''material'' evidence in considering the merits of Wyman's materiality argument, our review of the record reveals that substantial evidence does not support the district court's findings in this regard. In particular, we observe that Dunn intertwined her accusations with her mental health issues and treatment to such an extent that her mental health became logically connected with her accusations. Due to the circumstances in which Dunn made the accusations, and Wyman's proffers, which include Dunn's own statements to police, we determine that Wyman effectively demonstrated that Dunn's mental health records had some logical connection with the facts of consequence and issues presented in the case. Accordingly, we conclude that substantial evidence does not support the district court's conclusion that Wyman failed to demonstrate the materiality of Dunn's mental health records.

While we conclude that the district court abused its discretion regarding Wyman's demonstrated materiality, our inquiry is not complete, as Wyman was further required to establish that, absent the material evidence, her defense would be prejudiced.

### Prejudice

■■■

This court has held that even when a district court abused its discretion by finding that the requested evidence was not ''material,'' a refusal to authorize the issuance of a certificate may be justified if the defendant fails to show how the absence of the evidence preju-

diced his or her defense. *Wilson v. State*, 121 Nev. 345, 368, 114 P.3d 285, 300 (2005). A district court's exclusion of evidence will be deemed "prejudicial if there is a reasonable probability that the . . . [evidence] would have affected the outcome of the trial." *Bell v. State*, 110 Nev. 1210, 1215, 885 P.2d 1311, 1315 (1994). This court has clarified that " '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome of the case.' " *Id.* (quoting *State v. Schreuder*, 712 P.2d 264, 275 (Utah 1985)). Generally, this court will consider whether the evidence presented against the defendant was overwhelming. *Id.*

Wyman argues that she satisfactorily demonstrated that had she been provided with Dunn's mental health records, there is a reasonable probability that the outcome of the case would have been different. In particular, Wyman asserts that she presented the district court with detailed offers of proof, admitted in the form of Dunn's own statements to police. In those statements, Dunn told police that: (1) it was during her therapy treatments that she first made her accusations, after 32 years of nondisclosure; (2) Dunn "recalled" more memories during a session with her therapist subsequent to rendering the initial allegations; (3) Dunn continued to meet with a therapist once per week and a psychiatrist once per month in order to "deal with all the issues and so that [she is] a strong witness" for the State; (4) she suffers from "major depression"; (5) Dunn attempted to commit suicide several times since 1974; and (6) she had a mental breakdown in 2005. After reviewing the record, we are convinced that Wyman was prejudiced by the court's decision not to issue the certificate of materiality.

The evidence against Wyman was not overwhelming, with the State's case depending in large part on Dunn's testimony. Although the State presented testimony from other witnesses regarding suspicions of child abuse as being the cause of death, Dunn was the only witness who directly implicated Wyman as being culpable for J.W.'s death. Because Dunn was Wyman's only direct accuser, her reliability and credibility were central to the case. And Dunn placed her mental health at issue by the very fact that she made the accusations while receiving mental health treatment and emphasizing that the murder was the cause of her mental health instability. As a result, we conclude that Wyman adequately demonstrated that, had she been provided with Dunn's mental health records as she requested in seeking the certificate of materiality, there existed a probability that the evidence would have affected the outcome of the trial sufficient to undermine confidence in the outcome of the case. Consequently, we conclude that the district court's finding that Wyman failed to demonstrate that she would be prejudiced without Dunn's mental health records is not supported by substantial evidence.

In sum, we conclude that the district court abused its discretion by denying Wyman's request for a certificate of materiality to obtain Dunn's mental health records from California. Because we conclude that this error was not harmless, we reverse on this ground.

## CONCLUSION

We conclude that the district court did not err by denying Wyman's motion to dismiss the complaint due to the pre-indictment delay of 32 years. In coming to this conclusion, we are persuaded to follow the United States Court of Appeals for the Ninth Circuit and determine that this court will review challenges regarding pre-indictment delay for an abuse of discretion. Because Wyman failed to establish that she was prejudiced by the delay and that the State intentionally delayed filing the complaint in order to gain a tactical advantage over the defense, we conclude that Wyman's challenge does not warrant reversal.

Turning to Wyman's challenge to the district court's denial of her request for a certificate of materiality under Nevada's Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings, we conclude that the district court erred. In rendering this decision, we interpret NRS 174.425(1) to extend to subpoenas duces tecum for books and records that require the appearance of an out-of-state witness. Moreover, we determine that the term "material," as used in Nevada's Uniform Act, refers to evidence having some logical connection with the facts of consequence or the issues presented in the case. Pertaining to the merits of Wyman's challenge, after examining the record, we determine that substantial evidence does not support the district court's conclusions regarding Wyman's proffers and, therefore, conclude that the district court abused its discretion by denying Wyman's request for a certificate of materiality to obtain Dunn's out-of-state mental health records.

Accordingly, we reverse and remand for further proceedings consistent with this opinion.

PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.