*762 OPINION

Per Curiam:

The primary issue in this appeal is whether the district court abused its discretion in failing to sever appellant John Douglas Chartier’s trial from that of his codefendant, David Wilcox. We conclude that the district court abused its discretion in failing to sever Chartier’s trial from Wilcox’s trial. Chartier suffered unfair prejudice because the cumulative effect of the joint trial violated Chartier’s right to a fair trial by preventing the jury from making a reliable judgment as to his guilt or innocence. For this reason, we reverse the judgment of conviction and remand to the district court for a new trial.

FACTS

In the early morning hours of August 18, 2004, Rachel Bernat and her father, Carlos Aragon, were stabbed to death outside their home in Las Vegas. In addition to Bernat and Aragon, Bernat’s two young daughters and her mother, Iola Jean Taylor, were living in the home at the time of the murders. Bernat’s daughters were sleeping on the living room floor at the time and were awakened by their mother’s cries for help.
Bernat’s then ten-year-old daughter testified before the grand jury and at trial that from the living room floor she was able to see a person holding a knife and stabbing her mother. At first, Bernat’s daughter told officers that she thought the assailant was Bernat’s ex-husband, Chartier, but later recanted that statement. Taylor, upon hearing Bernat’s screams, made her way to the front door and attempted to fend off Bernat’s attacker with her cane and drag Bernat back into the house. The attacker grabbed the cane from Taylor and struck her with it and then continued to stab Bernat. Taylor testified that she was “positive” that the man she saw stabbing her daughter was not Chartier. Aragon was stabbed twice and murdered somewhere near his van parked in the driveway.
At the time of the murders, Bernat and Chartier were involved in a child custody battle over their young son. Months before the *763 killings, the Clark County Family Court granted Bernat’s request for permission to move to another state with the boy. The court also granted Chartier visitation for seven weeks in the summer. Pursuant to the court’s order, their son was in Chartier’s custody at the time of the murders. By all accounts, Chartier was upset about the custody arrangement.
In the years prior to the murders, Chartier had developed a friendship with David Wilcox, one of Chartier’s employees. Wilcox had an extensive military background as a sniper, a fact that intrigued Chartier. The two began a friendship out of Chartier’s admiration for Wilcox, which lead to Chartier living with Wilcox and his wife, Cindy, for a short time after his divorce from Bemat. Following the murders, Cindy turned over a suicide letter written by Chartier in June of 2002. The letter was addressed to Wilcox and asked him to “take out mom and grandpa” with a parenthetical explaining that grandpa was Aragon. The letter also instructed Wilcox to take custody of Chartier’s young son and to destroy the letter before police arrived.
The State prosecuted Wilcox and Chartier for the murders on the theory that Chartier wanted Bernat dead because of the custody dispute and that he recruited Wilcox to carry out the murders. They were each charged with one count of conspiracy to commit murder and two counts of murder with the use of a deadly weapon. To support its theory, the State called several witnesses who testified to Chartier’s arrears in child support payments and to statements Chartier made that Bernat “deserved to be killed.” Several witnesses also testified to Chartier’s unusual relationship with Wilcox.
Chartier and Wilcox were tried together after the district court denied Chartier’s motion to sever. At trial, Chartier defended primarily on the grounds that he had no motive to kill Bernat and Aragon because he felt that the custody issue was resolved largely in his favor and that he had an alibi. Chartier’s then-girlfriend, Sharon Sutton, testified that Chartier was home with her the night of the murders and was in bed with her that morning. Wilcox’s defense was that not only did he have no personal motive to kill Bernat and Aragon, but that Chartier was the mastermind and killer.
Chartier and Wilcox were convicted on all three charges following a five-day jury trial. Both men were sentenced to consecutive sentences of life without parole for each count of first-degree murder with the use of a deadly weapon and four to ten years for conspiracy to commit murder.

DISCUSSION

Chartier raises numerous issues on appeal. Of those issues, we address only one: whether the district court abused its discretion in *764 failing to sever Chartier’s trial from that of Wilcox.[1] We conclude that the district court abused its discretion when it denied Chartier’s motion to sever his trial from Wilcox’s trial because the cumulative effect of joinder was so prejudicial as to affect Chartier’s right to a fair trial.
Chartier offers three arguments to support his contention that the district court should have severed his trial from Wilcox’s trial. First, Chartier argues that his defense was so antagonistic to Wilcox’s defense as to render the trial unfair. Second, Chartier claims that his ability to prove his theory of the defense was impaired by the joinder. Third, Chartier argues that the cumulative effect of his and Wilcox’s mutually antagonistic defenses and Chartier’s inability to prove his theory of the case resulted in irreparable harm and prejudice such that an injurious effect was had upon the verdict. We agree with Chartier’s argument that the cumulative effect of the joint trial warrants reversal and that the district court abused its discretion by denying Chartier’s motion to sever.
NRS 174.165(1) provides that a trial judge may sever a joint trial if “it appears that a defendant ... is prejudiced by a joinder of . . . defendants ... for trial together.” Further, “[t]he decision to sever a joint trial is vested in the sound discretion of the district court and will not be reversed on appeal unless the appellant ‘carries the heavy burden’ of showing that the trial judge abused his discretion.”[2] Although we have long recognized that *765 some level of prejudice exists in a joint trial, error in refusing to sever joint trials is subject to harmless-error review.[3] “To establish that joinder was prejudicial requires more than simply showing that severance made acquittal more likely; misjoinder requires reversal only if it has a substantial and injurious effect on the verdict.’ ’[4]
“[District courts must determine the risk of prejudice from a joint trial based on the facts of each case.”[5] “A district court should grant a severance ‘only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.’ ”[6] Conflicting defenses may cause prejudice warranting severance if the defendant seeking severance shows that the codefendants have “‘conflicting and irreconcilable defenses and there is danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.’ ’ ’[7] The district court’s duty to consider the potential prejudice that may result from a joint trial does not end with the denial of a pretrial motion to sever. Rather, as this court has recognized, “the district court has ‘a continuing duty at all stages of the trial to grant a severance if prejudice does appear.’ ”[8]
We hold that the cumulative effect of the joint trial in this case was not harmless because the joinder had an injurious effect on the verdict as demonstrated by the conflicting and irreconcilable defenses in this case. Chartier defended on the basis that he was not involved in the crimes at any stage of planning or execution and that Wilcox committed the murders of his own volition out of a misguided desire to “help” Chartier. In contrast, Wilcox defended on the theory that Chartier was not only the mastermind but that he was present at the scene and Wilcox acted at Chartier’s direction. Additionally, because of the joinder, Chartier was precluded from questioning Wilcox as to the reasons why he kept a suicide note that was several years old. Finally, during cross-examination of witnesses called by the State against Chartier, Wilcox was able to emphasize to the jury the highly contentious nature of Chartier’s custody dispute with Bernat, which likely improperly influenced the jury and highlighted the conflict between Chartier’s and *766 Wilcox’s defenses. While standing alone these instances are not enough to warrant a severance, we conclude that the cumulative effect resulted in an injurious impact on the jury’s verdict. Therefore, the district court abused its discretion by failing to sever the trials, and a reversal of Chartier’s convictions is warranted.

Antagonistic defenses

Chartier cites several examples for why his and Wilcox’s defenses were mutually antagonistic. First, Chartier argues that Wilcox’s theory of the case was so antithetical to even the State’s case that a second prosecution of Chartier was created. Accordingly, Chartier argues that Wilcox presented a theory that Chartier was in fact the murderer and present at the scene, even though the State’s case against Chartier was presented under a conspiracy theory. Therefore, Chartier argues that he was subject to defending himself under multiple theories of the crime. Second, Chartier contends that the direct evidence against Wilcox was “overwhelming” while the evidence against him was minimal. Finally, Chartier claims that the two men had critical tactical differences in jury selection whereby Wilcox sought jurors who were not inclined to give the death penalty, while Chartier was concerned primarily with selecting jurors based on the guilt phase.
“ [Antagonistic defenses are a relevant consideration but [are] not, in themselves, sufficient grounds for concluding that joinder of defendants is prejudicial.’ ’[9] We considered a severance claim based on antagonistic defenses in Marshall v. State.[10] In that case, we observed that “[t]he defenses were indeed antagonistic, and Currington [the codefendant] testified in an effort to exonerate himself and inculpate Marshall.”[11] However, we further concluded that because the prosecution presented ample evidence against both defendants and the State’s case was not dependent upon testimony from either defendant, there was “no indication that anything in this joint trial undermined the jury’s ability to render a reliable judgment as to Marshall’s guilt.”[12]
Here, the defenses are antagonistic because Wilcox claimed that Chartier was present at the scene and was the attacker despite a lack of evidence to support this theory and despite Taylor’s testimony that the attacker she saw was definitively not Chartier. Because of these factors, we conclude that, like the situation in Marshall, the defenses here were mutually antagonistic.

*767
Diminished ability to present theory of defense

Chartier argues that his ability to present the full theory of his defense was hindered by the joint trial primarily because he was precluded from introducing evidence of wiretapped conversations between himself and Wilcox. Chartier’s theory of his defense was that he was not involved with the murders in any way.
This court has held that severance may be required where a failure to sever hinders a defendant’s ability to prove his theory of the case.[13]
Here, police recorded conversations between Chartier and Wilcox during their investigation. The record indicates that Wilcox made inculpatory statements during the recorded conversations. Chartier’s request to introduce this evidence was denied, in part, because of ensuing prejudice to Wilcox.
Due to the district court’s denial of Chartier’s motion for severance, Chartier was precluded from introducing into evidence Wilcox’s incriminatory statements, which prevented Chartier from presenting this critical evidence to the jury as part of his theory of defense. Chartier would have been able to introduce evidence of Wilcox’s wiretapped incriminating statements had the trials been severed.

Cumulative effect of joinder warrants reversal

Chartier argues that the cumulative effect of the district court’s failure to sever the trial warrants a reversal of his conviction. We agree.
“[The] cumulative effect [of accumulation of evidence of guilt which comes from being tried with other defendants] may indeed become so unfairly prejudicial that severance is warranted.”[14]
Here, because of the nature of the antagonistic defenses and Chartier’s inability to present his full theory of the defense, we conclude that the jury was prevented from making a reliable judgment about Chartier’s guilt or innocence. We conclude that the cumulative effect of the joint trial was not harmless, but rather resulted in a trial so unfair to Chartier as to warrant reversal of the judgment of conviction.

CONCLUSION

We conclude that Chartier suffered unfair prejudice by the joinder of his trial with Wilcox and that the district court abused *768 its discretion by failing to sever the trials. We further conclude that the misjoinder was not harmless. Accordingly, we reverse the judgment of conviction and remand to the district court for further proceedings.[15]

Chartier also argues that (1) the district court abused its discretion or committed plain error by refusing Chartier’s proposed jury instructions and issuing erroneous instructions regarding the required mens rea; (2) the grand jury indictment was fatally defective because it did not sufficiently apprise Chartier of the conspiracy charge, allowing the State to change its theory at trial; (3) the district court abused its discretion by allowing the State and Wilcox’s counsel to present bad act evidence and by failing to provide a limiting instruction regarding the evidence; (4) the prosecutor committed misconduct warranting reversal of Chartier’s convictions; (5) the district court abused its discretion by denying Chartier’s motion for a mistrial based on the closing argument of Wilcox’s counsel; (6) cumulative error warrants reversal of Chartier’s conviction; (7) the district court abused its discretion when it denied Chartier’s pretrial motions regarding sufficiency of the evidence presented at the grand jury to sustain probable cause; and (8) the State presented insufficient evidence at trial to support the jury’s verdict. We conclude that there was sufficient evidence to indict and convict Chartier. See McNair v. State, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (“The standard of review [when analyzing the sufficiency of evidence] in a criminal case is ‘whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ” (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979))). We decline to consider Chartier’s other claims because Chartier’s conviction must be reversed on other grounds.

Buff v. State, 114 Nev. 1237, 1245, 970 P.2d 564, 569 (1998) (citing Amen v. State, 106 Nev. 749, 755-56, 801 P.2d 1354, 1359 (1990)).

Id.

Marshall v. State, 118 Nev. 642, 647, 56 P.3d 376, 379 (2002) (citing Middleton v. State, 114 Nev. 1089, 1108, 968 P.2d 296, 309 (1998)).

Id. at 648, 56 P.3d at 379.

Id. at 647, 56 P.3d at 379 (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)).

Id. at 646, 56 P.3d at 378 (quoting Jones v. State, 111 Nev. 848, 854, 899 P.2d 544, 547 (1995)).

Id. at 646, 56 P.3d at 379 (quoting Neill v. State, 827 P.2d 884, 890 (Okla. Crim. App. 1992)).

 Id. at 648, 56 P.3d at 379.

 118 Nev. 642, 56 P.3d 376.

 Id. at 648, 56 P.3d at 380.

 Id.

Buff v. State, 114 Nev. 1237, 1245, 970 P.2d 564, 569 (1998).

U.S. v. Koon, 34 F.3d 1416, 1429 (9th Cir. 1994), rev’d in part on other grounds by Koon v. United States, 518 U.S. 81 (1996).

 Our colleague urges our adoption of a rule that would make misconduct by a codefendant’s counsel analogous to prosecutorial misconduct. In itself, such a rule seems problematic because of its potential for abuse and collusion. Moreover, in this case, while the actions of counsel for Chartier’s codefendant Wilcox were prejudicial to Chartier, those actions were ostensibly not prejudicial to Wilcox. The problem here is not one of misconduct by counsel, it is one of severance, as noted by the majority today.