# IN THE SUPREME COURT OF THE STATE OF NEVADA

WILLIE DARNELL MASON, JR., A/K/A
G-DOGG,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 68497

FILED

MAY 26 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit robbery, burglary while in the possession of a firearm, two counts of robbery with the use of a deadly weapon, first-degree murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, and battery with the use of a deadly weapon resulting in substantial bodily harm. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

Appellant Willie Darnell Mason, Jr., along with three people, planned to rob victim Derecia Newman. Upon their arrival at Newman's apartment, someone in the group murdered Newman and shot Newman's twelve-year-old daughter Devonia in the stomach. Police eventually arrested and charged all coconspirators in the murder. After a 17-day trial, Mason was convicted on all counts and sentenced to serve life without the possibility of parole plus additional concurrent and consecutive prison terms. On appeal, Mason argues (1) the district court erred by denying his motion to sever the trial from that of his codefendant; (2) his right to an impartial jury was violated by the jury being death-qualified; (3) his Confrontation Clause rights were violated by the admission of testimony from a coconspirator; (4) the district court

17-17689

committed misconduct by making an improper, prejudicial comment about a witness; (5) the State committed prosecutorial misconduct during closing argument by commenting upon witness credibility; and (6) that the cumulative effect of these errors requires reversal.

We conclude (1) the district court did not err in denying the motion to sever; (2) Mason's right to an impartial jury was not violated by a death-qualified jury; (3) the coconspirator's testimony was not hearsay; (4) the district court's comments were not actually prejudicial; (5) the State did not commit prosecutorial misconduct; and (6) no error requires reversal. Accordingly, we affirm the judgment of conviction.

## FACTS

*The crime*

In the late evening of August 6, and the early morning of August 7, 2010, Mason, David James Burns, Monica Martinez, and Stephanie Cousins were hanging out in Martinez's car. At one point in the evening, Cousins and Mason discussed committing robberies. Cousins presented the group with several potential robbery targets. The four ultimately agreed upon Derecia Newman's apartment.

On the drive to the apartment, Burns stated that "he wasn't . . . going home empty-handed," and "that he was going to go in there shooting and just . . . kill whoever was in there." Upon arrival at the apartment complex, Martinez backed her car into a parking space per Cousins's instruction. Mason, Burns, and Cousins exited Martinez's car and walked to the apartment. Derecia, Devonia, Devonia's father, and four other children were at the apartment.

Cousins knocked on the door and Derecia answered. The group entered the apartment and, shortly thereafter, someone in the

group[1] shot Derecia in the face. Devonia then ran into her mother's bedroom, and then the bathroom, where she was shot in the stomach.

Burns, Mason, Cousins, and Martinez exited the scene. After dropping Cousins off at another apartment complex, Burns, Martinez, and Mason traveled to Jerome Thomas's apartment to clean themselves and the murder weapon. While at Thomas's apartment, Donovan Rowland came to pick up the murder weapon. Thomas gave Rowland the murder weapon and told Rowland to dispose of it because it had been used in a recent murder.

A police investigation led officers to speak with Cousins. During the course of the investigation, police determined that Mason, Burns, Martinez, and Thomas were all implicated in the murder. Eventually, police arrested Martinez, Mason, and Burns. Rowland subsequently provided police with the location of the murder weapon.

*The trial*

Mason was charged with conspiracy to commit robbery, conspiracy to commit murder, burglary while in possession of a firearm, robbery with use of a deadly weapon, murder with use of a deadly weapon, attempted murder with use of a deadly weapon, and battery with use of a deadly weapon with substantial bodily harm. Mason pleaded not guilty to all counts.

*Motions to sever*

Mason and Burns were tried jointly. The State sought the death penalty against Burns, but not against Mason. Mason filed a pre-

---

[1]At trial, the State alleged that Burns was the shooter, and that Mason was guilty under a felony-murder theory.

SUPREME COURT
OF
NEVADA

(O) 1947A

trial motion to sever proceedings, arguing the death-qualified[2] jury and potentially conflicting theories of the case would prejudice Mason.[3] The district court denied the motion.

On the ninth day of trial, Mason again moved for severance. Mason argued that if no severance was granted, Rowland, a witness who was to be called by the State, would offer prejudicial testimony naming Mason as the gunman in the alleged murder. The district court also denied Mason's second motion for severance.

After the denial of Mason's second motion for severance, Rowland eventually gave conflicting testimony regarding the identity of the shooter. On direct examination, Rowland read into the record his previous statement to police, which indicated that, upon Rowland's arrival at Thomas's apartment to retrieve the murder weapon, Rowland was told that either Mason or Burns was the shooter. On cross-examination,

---

[2]A death-qualified jury is "[a] jury that is fit to decide a case involving the death penalty because the jurors have no absolute ideological bias against capital punishment." *Death-Qualified Jury, Black's Law Dictionary* (10th ed. 2014); *see also Buchanan v. Kentucky,* 483 U.S. 402, 407 n.6 (1987) ("A 'death-qualified' jury is one from which prospective jurors have been excluded for cause in light of their inability to set aside their views about the death penalty that 'would prevent or substantially impair the performance of [their] duties as [jurors] in accordance with [their] instructions and [their] oath.'" (alterations in original) (quoting *Wainwright v. Witt,* 469 U.S. 412, 424 (1985))).

[3]Although the jury was death-qualified, during the trial, Burns entered into an agreement with the State under which both parties would stipulate to a sentence of life without the possibility of parole were Burns to be found guilty of first-degree murder. Ultimately, neither defendant faced the death penalty.

Rowland testified that, while he had given different answers regarding the identity of the shooter to police, Mason's attorney, Burns's attorney, the State, and a grand jury, he now believed Mason was the shooter, although he could not provide a reason for his changed belief.

*Judge Thompson's comments*

On redirect, the State began to treat Rowland as an adverse witness and ask leading questions, which the court allowed over objection. During an exchange between the State and Rowland, defense counsel objected to a leading question, and the court overruled the objection, noting that "[Rowland]'s obviously identified with the defendants, not with the plaintiff. Strange identification, I must admit . . . ."

*Closing argument*

During closing argument, both the State and defense commented upon the lack of various witnesses' credibility. On rebuttal, the State said of the witnesses:

> It would be a wonderful situation should we be . . . living in a world in which people who are selling crack out of their house who get murdered happen to have a priest and a nun who's standing there and is part of the witnesses in the case. . . .

> Those aren't the people that are involved in murders. I don't get to choose these people. There's no doubt that these [witnesses] are [Mason's and Burns's] friends. They're not my friends. These are people that are associated with these two defendants. You can't blame us for the quality of the witnesses.

> But more importantly, it's not about were they telling the truth on the stand completely about that. Right? It's not a question, did what he say, is that what he said, is that true? No. It's what did he say that makes it relevant? What can we

figure out from what they said in this particular case.

*Verdict*

The jury returned a verdict of guilty on all charges. Additionally, the jury returned a special guilty verdict of first-degree murder with use of a deadly weapon. Mason was sentenced to serve concurrent and consecutive prison terms totaling life without the possibility of parole plus additional concurrent and consecutive prison terms. This appeal followed.

## DISCUSSION

*The district court did not abuse its discretion by denying Mason's second motion to sever*

Mason claims that severance was required because a witness was expected to testify that he was the shooter and not his codefendant, thus the codefendants' defenses were antagonistic. We disagree.

Under NRS 174.165(1), a trial judge may sever a joint trial if "it appears that a defendant . . . is prejudiced by a joinder of . . . defendants . . . for trial together." Additionally, "[t]he decision to sever a joint trial is vested in the sound discretion of the district court and will not be reversed on appeal unless the appellant carries the heavy burden of showing that the trial judge abused his discretion." *Chartier v. State*, 124 Nev. 760, 764, 191 P.3d 1182, 1185 (2008) (alteration in original) (internal quotation marks omitted). While this court has "long recognized that some level of prejudice exists in a joint trial, error in refusing to sever joint trials is subject to harmless-error review." *Id.* at 764-65, 191 P.3d at 1185. Demonstrating "that joinder was prejudicial requires more than simply showing that severance made acquittal more

likely; misjoinder requires reversal only if it has a substantial and injurious effect on the verdict." *Id.* at 765, 191 P.3d at 1185.

Severance is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (internal quotation marks omitted). Antagonistic defenses "may cause prejudice warranting severance if the defendant seeking severance shows that the codefendants have conflicting and irreconcilable defenses and there is danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *Id.* (internal quotation marks omitted). "[A]ntagonistic defenses are a relevant consideration but [are] not, in themselves, sufficient grounds for concluding that joinder of defendants is prejudicial." *Id.* at 766, 191 P.3d at 1186 (alterations in original).

We conclude the district court did not err in denying Mason's motion to sever because Rowland's testimony did not create antagonistic defenses. Mason's theory of the case was that the group went to the apartment to buy drugs and that "somebody went crazy," resulting in Derecia's death. Burns's theory of the case was that he was not the shooter. These theories are not mutually exclusive (i.e., a shooter other than Burns or Mason could have gone crazy and shot Derecia, thus satisfying both theories), and Rowland's testimony did not eliminate either theory from possibility. Rowland gave conflicting testimony about the identity of the shooter—he admitted that, at various times, he alleged Burns was the shooter, that Mason was the shooter, and that he did not know the identity of the shooter, and was subsequently impeached by both the State and defense counsel. Thus, we conclude that whatever prejudice

was caused by Rowland's testimony was harmless and, accordingly, that the district court did not abuse its discretion in denying Mason's second motion to sever.[4]

*Mason's right to an impartial jury was not violated by the jury being death-qualified*

Mason argues that, although the issue of bias in death-qualified juries has been addressed by this court and the United States Supreme Court, this case presents an opportunity for this court to re-evaluate the issue because both defendants were tried by a death-qualified jury, despite neither facing the death penalty by the time of deliberation. We disagree.

The use of a death-qualified jury for a joint trial in which the death penalty was sought only against the codefendant does not violate the non-capital defendant's Sixth Amendment right to an impartial jury. *Buchanan*, 483 U.S. at 402. Further, this court is not "required to presume that a death-qualified jury is biased in favor of the prosecution. Rather, the accused has the burden of establishing the non-neutrality of the jury." *McKenna v. State*, 101 Nev. 338, 344, 705 P.2d 614, 618 (1985),

---

[4]We also note that the State presented substantial evidence, independent of Rowland's testimony, indicating Mason was guilty of the charged crimes, further demonstrating any error caused by the joined trials was harmless. *See Marshall v. State*, 118 Nev. 642, 648, 56 P.3d 376, 380 (2002) (affirming district court's denial of motion to sever because the State presented ample evidence against both defendants and the State's case was not dependent upon testimony from either defendant, demonstrating there was "no indication that anything in this joint trial undermined the jury's ability to render a reliable judgment as to [the defendant's] guilt").

*abrogated on other grounds by Nunnery v. State*, 127 Nev. 749, 263 P.3d 235 (2011) (citing *Witherspoon v. Illinois*, 391 U.S. 510, 520 n.18 (1968)).

We hold Mason has not established the non-neutrality of the jury and, thus, his argument fails. Mason cites to no authority nor provides any substantive argument as to why this court should reexamine its caselaw on this issue. Accordingly, we need not address this issue. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

*Mason's Confrontation Clause rights were not violated by the admission of Rowland's testimony*

Mason argues Rowland's testimony was inadmissible hearsay pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). We disagree.

This court "generally review[s] a district court's evidentiary rulings for an abuse of discretion." *Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009). However, whether a defendant's Confrontation Clause rights were violated is a question of law that is reviewed de novo. *Id.*

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also Crawford*, 541 U.S. at 42. As a result, hearsay statements are generally inadmissible. NRS 51.065. A statement is hearsay if it is "offered in evidence to prove the truth of the matter asserted." NRS 51.035. If hearsay testimony is "testimonial" in nature, the Sixth Amendment affords a defendant the right to confront the declarant. *Crawford*, 541 U.S. at 53.

However, a statement is not hearsay if it is "offered against a party and is . . . [a] statement by a coconspirator of a party during the

course and in furtherance of the conspiracy." NRS 51.035(3)(e); *see also Crawford*, 541 U.S. at 56 (noting "statements in furtherance of a conspiracy" are not testimonial hearsay). "For NRS 51.035(3)(e) to apply, the existence of the conspiracy must be established by independent evidence. A prima facie showing of the conspiracy is sufficient." *Crew v. State*, 100 Nev. 38, 46, 675 P.2d 986, 991 (1984). "[T]he duration of a conspiracy is not limited to the commission of the principal crime, but extends to affirmative acts of concealment." *Id.* (citing *Foss v. State*, 92 Nev. 163, 547 P.2d 688 (1976)). "Whether a particular statement to a third party was intended to induce that party to join or assist the conspiracy, hence was 'in furtherance' of it, must be determined by careful examination of the context in which it was made." *Burnside v. State*, 131 Nev., Adv. Op. 40, 352 P.3d 627, 642 (2015).

We conclude Rowland's testimony was not hearsay, but rather a statement offered against a party by a coconspirator during the course and in furtherance of a conspiracy, and thus not subject to the strictures of *Crawford* and the Confrontation Clause. The context of Rowland's testimony supports this conclusion—he testified that he was told to dispose of the murder weapon because someone (either Burns, Mason, or another, unidentified man) used it to murder someone. We conclude discussion of the disposal of a murder weapon used in a crime that produced multiple conspiracy indictments satisfies NRS 51.035(3)(e). Because the testimony was not hearsay, we hold the district court did not err in admitting that testimony.

*The district court's comments about Rowland did not prejudice Mason*

During an exchange between the State and Rowland, defense counsel objected to the State's leading question, and the court overruled the objection, noting that leading questions were acceptable because

10

"[Rowland]'s obviously identified with the defendants, not with the plaintiff. Strange identification, I must admit . . . ." Mason argues this comment had the prejudicial effect of "marrying" Mason to the testimony given by Rowland prior to the comment. We disagree.

Mason did not object to this comment at trial. Generally, to preserve a claim, the defendant must object to the misconduct at trial. *See Hernandez v. State*, 118 Nev. 513, 525, 50 P.3d 1100, 1109 (2002). "When an error has not been preserved, this court employs plain-error review." *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). Under plain-error review, "an error that is plain from a review of the record does not require reversal unless the defendant demonstrates that the error affected his or her substantial rights, by causing actual prejudice or a miscarriage of justice." *Id.* (internal quotation marks omitted).

We conclude that Mason fails to demonstrate actual prejudice or a miscarriage of justice stemming from the district court's comments. Mason's argument seems to mischaracterize the comments—although Mason argues the comments were inflammatory, these comments seemingly explained the district court's rationale in allowing the State to ask leading questions to their own witness, who had become adverse during questioning. Further, in light of the substantial evidence produced against Mason presented over the course of a 17-day murder trial, we hold the comments were unlikely to prejudice the jury to an extent necessitating reversal. Therefore, we conclude Mason's argument fails.

*The State did not commit prosecutorial misconduct during its closing argument*

Mason argues the State committed prosecutorial misconduct during the rebuttal closing argument by (1) addressing the credibility of certain State witnesses in a manner that shifted the burden of proof, and

(2) discussing witness credibility in a way that contrasted with the instructions provided to the jury. We disagree.

"To determine if a prosecutor's misconduct was prejudicial, we examine whether a prosecutor's statements so infected the proceedings with unfairness as to result in a denial of due process." *Byars v. State*, 130 Nev., Adv. Op. 85, 336 P.3d 939, 950 (2014). Additionally, "[t]he statements should be considered in context, and a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Id.* at 950-51 (internal quotation marks omitted).

Mason argues the State's rebuttal argument improperly commented on the credibility of certain witnesses "by contrasting them with clergy, suggesting that if the jury found the witnesses to lack credibility, the blame for that should rest with [Mason] and [Burns], rather than the State," and that the State "suggest[ed] that in fact it was the fault of [Mason] and [Burns] that the State did not have more credible witnesses," and that these comments shifted the burden of providing credible witnesses to the defense. When viewed in context, Mason's argument is not supported by the record. The State and each of the defense attorneys presented closing arguments that explicitly discussed the credibility of the witnesses in the case. In context, the closing arguments proceeded as follows: The State discussed a possible lack of credibility of their own witnesses, but noted that the testimony may still contain true information; defense counsel discussed this lack of credibility as a demonstration of reasonable doubt, and hinted that the lack of credibility of the witnesses imputed a lack of credibility onto the State; the State rebutted that this case did not present ideal witnesses, but,

nonetheless, the witnesses were the people who saw the crimes take place, and thus their testimony should be assessed accordingly.

In this context, the State's comments did not shift the burden to the defense, nor did the State's comments improperly comment upon witness credibility. The State's comments submitted to the jury that the credibility of each witness was not as important as the facts that their testimony revealed. We conclude the State's comments were logically deduced from the testimony of the witnesses and as a response to the theories presented by the defense. Therefore, given the nature of the statements and the high bar for overturning a jury verdict due to a prosecutor's statements at closing argument, we hold Mason was not denied a fair trial.

*There were no errors to cumulate*

Mason argues the cumulative effect of errors below violate Mason's due process right to a fair trial and require the reversal of his conviction. We conclude there were no errors to cumulate and, thus, Mason's right to a fair trial was not compromised. *See Carroll v. State*, 132 Nev., Adv. Op. 23, 371 P.3d 1023, 1035 (2016). Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(0) 1947A

cc: Hon. Eric Johnson, District Judge
Robert L. Langford & Associates
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

14