# IN THE SUPREME COURT OF THE STATE OF NEVADA

MARIO JOHN CAMACHO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 73380

FILED

MAR 1 8 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S.Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit kidnapping, first-degree kidnapping with the use of a deadly weapon, robbery with the use of a deadly weapon, two counts of first-degree kidnapping with use of a deadly weapon resulting in substantial bodily harm, first-degree murder with the use of a deadly weapon, and attempted murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Judge.

Appellant Mario John Camacho and his co-defendant, Eric Deon Robinson, engaged in a series of criminal activities to recover money from a transaction involving drugs and a firearm. On the day of the crime, Robinson assisted Camacho in kidnapping three individuals to interrogate them about the money. Camacho shot and killed one of the victims and shot and severely injured a second victim. Camacho and Robinson were later arrested, and were subsequently tried together.

Camacho appeals his conviction on five grounds. First, he argues that the district court erred by denying his challenges to the State's use of its peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79 (1986). Second, he argues that the district court abused its discretion in denying his motion to sever, made prior to closing argument. Third, Camacho argues that the district court unreasonably restricted his ability

19-11765

to present a duress defense by excluding certain evidence and by failing to give a jury instruction on duress. Fourth, he argues that insufficient evidence supported Camacho's conviction for kidnapping with use of a deadly weapon resulting in substantial bodily harm. Fifth, Camacho argues that cumulative error warrants reversal.

We conclude that the sole error committed by the district court was its failure to grant Camacho's motion to sever the trial upon his request prior to closing arguments. Nevertheless, we conclude that the error was harmless, as Camacho fails to demonstrate that the error had a substantial and injurious effect on the verdict. *See Chartier v. State*, 124 Nev. 760, 765, 191 P.3d 1182, 1185-86 (2008). Accordingly, we affirm the judgment of conviction.

*The district court did not err in denying the Batson challenges*

Camacho argues that the district court erred by concluding that *Batson* was not violated, as the State's exercise of peremptory challenges against two of the three African-Americans in the venire—Prospective Juror Nos. 533 and 665—were purposefully discriminatory. We disagree.

The use of racially-motivated peremptory challenges violates the Equal Protection Clause of the Fourteenth Amendment, *Batson*, 476 U.S. at 89. When a defendant mounts an equal protection challenge to the State's use of its peremptory challenges, the district court evaluates the equal protection challenge using the three-part test outlined in Batson:

> (1) the defendant must make a prima facie showing that discrimination based on race has occurred based upon the totality of the circumstances, (2) the prosecution then must provide a race-neutral explanation for its peremptory challenge or challenges, and (3) the district court must determine whether the defendant in fact demonstrated purposeful discrimination.

*Diomampo v. State*, 124 Nev. 414, 422, 185 P.3d 1031, 1036 (2008) (citing *Batson*, 476 U.S. at 96-98)). The proponent of the *Batson* challenge has the ultimate burden of demonstrating that the prosecution's race-neutral explanation is pretextual such that "it is more likely than not that the State engaged in purposeful discrimination." *McCarty v. State*, 132 Nev. 218, 226, 371 P.3d 1002, 1007 (2016). The court reviews the district court's determination on discriminatory intent for clear error. *Id.*

We hold that Camacho fails to demonstrate that the district court clearly erred in rejecting Camacho's *Batson* challenge to the State's peremptory challenges. As required by step two of the Batson analysis, the State provided race-neutral explanations for striking both prospective jurors. With regard to Prospective Juror No. 533, the State explained that it struck the prospective juror because she had characterized a man who had burglarized her home as "polite," showing that she may have a lenient view towards defendants. The State explained that it struck Prospective Juror No. 665 based on her previous unsuccessful attempts to obtain employment with law enforcement, and because her brother was on trial for involuntary manslaughter at the time. Camacho fails to meet his burden that either of these race-neutral explanations were pretextual or that it was more likely than not that the State engaged in purposeful discrimination.[1]

---

[1]Camacho also argues that reversal is warranted based on the State's failure to file under seal its notes about jury selection. While "[a] court has the ability to fashion an appropriate sanction for conduct which abuses the judicial process," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), Camacho fails to cite to relevant authority supporting the proposition that the appropriate sanction here is reversal of Camacho's judgment of conviction. Thus, we need not consider this additional issue. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's

*The district court abused its discretion in denying the motion to sever, but the error was harmless*

Camacho argues that the district court erred by denying his motion to sever prior to closing argument because the unique circumstances present in this case reflect that Robinson's counsel became a "second prosecutor" against Camacho when he conceded guilt in closing argument. Camacho argues that based on Robinson's surprise concession in closing, a severance was warranted because of the risk of prejudice to Camacho. We agree.

A trial court has discretion to sever a trial and its decision will not be reversed on appeal unless the appellant shows that the court abused its discretion. *Chartier*, 124 Nev. at 764, 191 P.3d at 1185. Further, any error by the district court in failing to sever the trial is subject to a harmless error review, and reversal will only be required if the error had "a substantial and injurious effect on the verdict." *Id.* at 765, 191 P.3d at 1185 (holding that a joint trial "was not harmless because the joinder had an injurious effect on the verdict"). Under NRS 174.165, a trial judge may sever a joint trial "or provide whatever other relief justice requires" if "it appears that a defendant . . . is prejudiced by a joinder . . . of defendants . . . for trial together." In determining whether there is a risk of prejudice, the district court looks to "the facts of each case," and it has "a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Chartier*, at 765, 191 P.3d at 1185-86 (internal quotation marks omitted). "[S]everance should only be granted when there is a serious risk that a joint trial would compromise a specific trial right of one

responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Rodriguez v. State*, 117 Nev. 800, 808-09, 32 P.3d 773, 779 (2001) (internal quotation marks omitted).

Prior to closing arguments, for the first time, Robinson's counsel advised the district court that Robinson would concede that he was guilty of felony murder of Wiest because the evidence supported a guilty verdict for the underlying enumerated felonies. Robinson's counsel argued that Robinson was doing this to demonstrate remorse and show that he was taking responsibility for his actions in an effort to mitigate his punishment before the district court judge that would eventually sentence him. He further indicated that, after Camacho refused the State's package negotiations with Robinson in this case, Robinson's trial strategy was to thwart any attempt by Camacho to assert that Robinson was the shooter by admitting in closing to the conspiracy and aiding and abetting the shooter charges.

We conclude that Robinson's concession for the first time in closing arguments implied that the State had met its burden on all charges against Camacho because both he and Robinson were charged under theories of conspiracy and aiding and abetting regarding the underlying charges involving felony murder. Because there was no way at this point in the trial for Camacho to cross-examine Robinson regarding this concession, under these unique circumstances, we conclude that the district court should have severed the closing arguments and deliberations as requested by Camacho.

During closing arguments, the jury may have been affected by the State arguing that Camacho was the shooter and then hearing Robinson's counsel's concession, which suggested that Camacho was the

Supreme Court
of
Nevada

(O) 1947A

5

shooter. Thus, Robinson's counsel became the "second prosecutor" during closing arguments, with no way for Camacho to defend against at this point of the trial. *Cf. United States v. Shkreli*, 260 F. Supp. 3d 247, 257 (E.D.N.Y. 2017) ("The jury's ability to make a reliable judgment maybe [sic] affected by the compounded effect of hearing the government's case in chief twice, once from the government and then again from [a co-defendant]."). Therefore, the district court erred when it denied Camacho's request to sever the trial prior to closing argument under these facts.

Nevertheless, we further conclude that the district court's error denying Camacho's motion to sever the trial was harmless because Camacho fails to demonstrate that it had "a substantial and injurious effect on the verdict." *Chartier*, 124 Nev. at 765, 191 P.3d at 1185. Jury Instruction No. 44 stated, in relevant part, that "[s]tatements, arguments and opinions of counsel are not evidence in the case," and Jury Instruction No. 53 stated, in relevant part, that "whatever counsel may say, you will bear in mind that it is your duty to be governed in your deliberation by *the evidence* as you understand it and remember it to be and by the law as given to you in these instructions." (Emphasis added). We presume that the jury follows it instructions, *Leonard v. State*, 117 Nev. 53, 66, 17 P.3d 397, 405 (2001), and thus, we presume that the jury did not consider Robinson's concession during closing argument as evidence in determining whether the State met its burden as to Camacho. Moreover, the State presented overwhelming evidence in the form of testimony from two of the victims present during the crimes, including the victim that had been shot in the face, who testified that Camacho was the shooter. Accordingly, we conclude that reversal is not warranted.

*The district court did not unreasonably restrict Camacho's ability to present a duress defense*

Camacho argues that the district court's evidentiary rulings and failure to instruct the jury on the defense of duress violated his right to present a duress defense. We disagree.

A defendant's right to present a defense is not unlimited, it is subject to reasonable restrictions. *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Jackson v. State*, 116 Nev. 334, 335, 997 P.2d 121, 121 (2000). Nevertheless, because general rules of evidence may be applied to exclude evidence proffered by a defendant provided that doing so is not "arbitrary" or "disproportionate to the purposes [the evidentiary rules] are designed to serve," *Scheffer*, 523 U.S. at 308, the question here is whether the district court abused its discretion in excluding the evidence offered by Camacho.

After a careful review of the record, we reject Camacho's assertions regarding admissibility of the threat evidence. Camacho fails to cogently argue under which exception to the rule against hearsay the alleged threats could be admitted by way of Lucas' testimony. *See Medina v. State*, 122 Nev. 346, 351, 143 P.3d 471, 474 (2006) (holding that "hearsay statements are inadmissible. A statement is hearsay if it is offered in evidence to prove the truth of the matter asserted. Hearsay is inadmissible unless it falls within one of the exceptions to the general rule.") (footnotes and internal quotation marks omitted). Thus, we need not consider this issue. *Maresca v. State*, 103 Nev. at 673, 748 P.2d at 6. Even if the district court had abused its discretion, the error would have been harmless in light of the overwhelming evidence against Camacho. *See Walker v State*, 116 Nev. 670, 677, 6 P.3d 477, 481 (2000) (holding that "hearsay errors are subject to harmless error analysis").

We similarly reject Camacho's arguments regarding admissibility of the threat evidence under the *res gestae* doctrine, as the

threat evidence here would only be used to explain why Camacho shot the victims, and does not involve evidence that is so inextricably intertwined that one act cannot be referred to without the other; it does not apply to evidence that helps *explain* a charged crime. *See Weber v. State*, 121 Nev. 554, 574, 119 P.3d 107, 121 (2005) (holding that NRS 48.035(3) does not apply when a witness is attempting to "explain" the charged crime by referring to the prior crime but, rather, only applies to allow the admission of evidence of a prior crime when a witness cannot "describe" the charged crime without referring to the prior crime) *rejected on other grounds by Farmer v. State*, 133 Nev., Adv. Op. 86, 405 P.3d 114, 120 (2017).

Lastly, we reject Camacho's argument that the district court erred by denying his ex parte application for order requiring a material witness to post bail. Specifically, Camacho fails to demonstrate that Albano was a material witness as she had no personal knowledge as to whether Camacho kidnapped and/or shot the victims, *Wyman v. State*, 125 Nev. 592, 608, 217 P.3d 572, 583 (2009) (emphasis added) (holding that a material witness is one that testifies about matters that are "logically connected with the facts *of consequence* or the issues in the case"), or that he was prejudiced because Lucas could testify to that information. *Bell v. State*, 110 Nev. 1210, 1215, 885 P.2d 1311, 1315 (1994) (holding that "exclusion of a witness' testimony is prejudicial if there is a reasonable probability that the witness' testimony would have affected the outcome of the trial").

As each ruling was consistent with the rules of evidence, we conclude that the district court's rulings were not "arbitrary" or "disproportionate," and thus, did not unreasonably restrict Camacho's right to present the defense of duress. *See Scheffer*, 523 U.S. at 308; *Jackson*, 116 Nev. at 335, 997 P.2d at 121. Moreover, because the admitted evidence did

not support the defense of duress, the district court did not abuse its discretion in refusing Camacho's proffered jury instruction on a duress defense. *See Atkinson v. MGM Grand Hotel, Inc.*, 120 Nev. 639, 642, 98 P.3d 678, 680 (2004) (holding that a "district court's decision to give or decline a proposed jury instruction is reviewed for an abuse of discretion," and a party is not entitled to a jury instruction on a case theory which is not supported by the evidence).[2]

*Sufficient evidence supported Camacho's conviction for kidnapping with use of a deadly weapon resulting in substantial bodily harm*

Camacho contends that there was insufficient evidence to support the substantial bodily harm enhancement based on the shooting of Wiest during his kidnapping because the death of a victim does not fall within the definition of "substantial bodily harm" under NRS 0.060(1).[3] We disagree.

---

[2]Even if we analyzed Camacho's claim on the merits, it fails. NRS 194.010(8) provides that a person is not criminally liable where they "committed the act . . . charged under threats or menaces sufficient to show that they had *reasonable* cause to believe, and *did believe*, their lives would be endangered if they refused, or that they would suffer great bodily harm." (Emphasis added). Camacho failed to introduce evidence that he actually believed his life to be in danger, or that such a belief was reasonable. Further, we agree with courts, such as *People v. Casares*, holding that the defense of duress requires that the threats to defendant's life be "both imminent and immediate at the time the crime is committed." *See, e.g.*, 364 P.3d 1093, 1122 (Cal. 2016) (internal quotation marks omitted). While Lucas testified that George was present in Camacho's home approximately one hour prior to the shootings, Lucas also testified that George was not threatening toward Camacho at the time, and instead, was threatening "towards [Lucas] and Wiest."

[3]Camacho's support for his proposition is distinguishable in that none of the cases he cites address whether death constitutes substantial bodily harm for purposes of enhancement. *See generally McCarty v. State*, 132

NRS 200.320(1)(a) provides a sentencing enhancement for "[a] person convicted of kidnapping in the first degree" if "the kidnapped person suffers substantial bodily harm during the act of kidnapping." "Substantial bodily harm" is "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." NRS 0.060(1). "Death" includes "the cessation of all vital functions." *Death, Black's Law Dictionary*, 484 (10th ed. 2014). Here, the shooting impaired the function of Wiest's "bodily member," i.e., his face and organs. The fact Wiest died

Nev. 218, 371 P.3d 1002 (2016); *Pascua v. State*, 122 Nev. 1001, 145 P.3d 1031 (2006); *Thomas v. State*, 114 Nev. 1127, 967 P.2d 1111 (1998). Another case to which Camacho cites, *People v. Milan*, 507 P.2d 956, 963 (Cal. 1973), is distinguishable in that, unlike in Camacho's case, the court was not analyzing an enhancement statute. To the extent Camacho argues that his double jeopardy rights were violated, a penalty enhancement does not constitute a double jeopardy violation. *Cf. Alotaibi v. State*, 133 Nev., Adv. Op. 81, 404 P.3d 761, 765 (2017) ("when an element goes *only* to punishment and is not essential to a finding of guilt, it is not an element of the offense for purposes of determining whether a lesser-included-offense instruction is warranted"), *cert. denied*, —— U.S. ——, 138 S. Ct. 1555 (2018); *LaChance v. State*, 130 Nev. 263, 274, 321 P.3d 919, 927 (2014) (noting that "a factor to be considered in sentencing . . . is not an element of the offense for purposes of *Blockburger*"). We further note that while Camacho argues that there is insufficient evidence for the substantial bodily harm enhancement, he does not argue that there was insufficient evidence to support his conviction for conspiracy to commit kidnapping, first-degree kidnapping with use of a deadly weapon, robbery with use of a deadly weapon, first-degree kidnapping with use of a deadly weapon resulting in substantial bodily harm, first-degree kidnapping with use of a deadly weapon resulting in substantial bodily harm, first-degree murder with use of a deadly weapon, and attempted murder with use of a deadly weapon. Indeed, our review of the record reveals sufficient evidence for the jury to have inferred that Camacho was guilty on these counts. *See Chism v. State*, 114 Nev. 229, 233, 954 P.2d 1183, 1185 (1998).



from the gunshot is definitive proof that the injury created a substantial risk of death.[4]

We therefore

ORDER the judgment of the district court AFFIRMED.[5]

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Silver

cc: Hon. Carolyn Ellsworth, District Judge
Special Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

---

[4]To the extent Camacho argues that that the charging documents were insufficient, Camacho fails to cogently argue any of these assertions and does present relevant authority in support thereof. Thus, we do not consider these issues. *See Maresca*, 103 Nev. at 673, 748 P.2d at 6.

[5]Because the district court committed only one error, we also reject Camacho's argument that cumulative error warrants reversal. *See Byford v. State*, 116 Nev. 215, 241-42, 994 P.2d 700, 717 (2000) (holding that multiple errors "may violate a defendant's constitutional right to a fair trial"); *United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) ("One error is not cumulative error.").