# IN THE SUPREME COURT OF THE STATE OF NEVADA

WILL ONIE SITTON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 73014

FILED

APR 19 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of three counts of burglary; two counts of forgery; and one count each of conspiracy to commit robbery and/or murder, robbery (victim 60 years of age or older), and first-degree murder (victim 60 years of age or older). Eighth Judicial District Court, Clark County; Douglas Smith, Judge.

Appellant Will Sitton, his brother Robert, and his girlfriend Jacquie Schafer were accused of robbing and killing an elderly man. Robert pleaded guilty and testified against Sitton and Schafer at their joint trial. A jury concluded that Sitton and Schafer were guilty of the charged offenses, and after a separate penalty hearing, Sitton was sentenced to death for the murder. In this appeal, we address two related errors that occurred during Sitton's trial: the denial of Sitton's motion for severance, and the violation of his constitutional right to confront his accusers. Although we conclude that the failure to sever was harmless on its own, the State fails to demonstrate that the Confrontation-Clause violation was harmless. *See Valdez v. State*, 124 Nev. 1172, 1189, 196 P.3d 465, 476 (2008) (discussing the review standard for constitutional and nonconstitutional harmless error). Accordingly, we conclude that reversal

19-17364

is warranted based on that violation, as well as based on cumulative error. *See id.* at 1195, 196 P.3d at 481 (discussing cumulative error).

*Severance*

Sitton challenges the district court's decision to deny his motion to sever his trial from Schafer's. We review the district court's severance decision for an abuse of discretion. *Chartier v. State,* 124 Nev. 760, 764, 191 P.3d 1182, 1185 (2008).

Sitton and Schafer have been jointly tried twice. Before the first trial, Sitton unsuccessfully argued orally and in writing that he should be tried separately because Schafer made statements implicating him in the murder.[1] During the second trial, Sitton orally moved for severance when Schafer began to elicit testimony that he was abusive and violent. Sitton and the State both expressed concern that such testimony would be unfairly prejudicial to Sitton, and the State acknowledged that the district court would have to sever the trials if it allowed evidence of Sitton's abusiveness. After conferring with Schafer ex parte, the district court judge, Judge Douglas Smith, granted the motion for severance. Shortly thereafter, Judge Smith reversed course, explaining that the Chief Judge had advised him to deny the motion because neither party had filed a written motion before trial seeking severance based on Schafer's domestic-violence themed defense. We conclude that Judge Smith abused his discretion in denying Sitton's oral severance motion.

A district court has a continuing duty to sever trials *whenever* prejudice appears, even if it appears for the first time in the middle of trial. *Chartier,* 124 Nev. at 765, 191 P.3d at 1186. As Judge Smith acknowledged,

---

[1]That trial ended in a mistrial.

the evidence that Schafer sought to admit was unfairly prejudicial to Sitton and would not have been admitted against him in a separate trial. *See United States v. Breinig*, 70 F.3d 850, 853 (6th Cir. 1995). He thus should have granted the motion to sever. Although the failure to sever was harmless on its own, its effect on the jury's verdict is compounded by the Confrontation Clause violation discussed below.

*Confrontation Clause*

Sitton asserts that his right to confront his accusers was violated when the district court admitted Schafer's statements implicating him in the murder because she did not testify and therefore he could not cross-examine her. *See Bruton v. United States*, 391 U.S. 123, 137 (1968). The State responds that Schafer's statements were appropriately redacted to remove all direct references to Sitton and replace his name with generic terms like "somebody" or "the other person." *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Gray v. Maryland*, 523 U.S. 185, 192-95 (1998). The State thus argues that any connection the jury might have made between Sitton and the generic person implicated in Schafer's redacted statements was an unavoidable side-effect of jurors being exposed to other evidence admitted at trial. Reviewing this claim de novo, *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992), we conclude that Schafer's redacted statements incriminated Sitton because the redactions did not completely remove reference to Sitton and the manner in which the statements were elicited from the detective strongly suggested that Sitton was the generic person directly incriminated by Schafer.

In redacting a nontestifying codefendant's statement to satisfy *Bruton*, "ordinarily the use of a term like 'the other guy'" will be sufficient. *Vazquez v. Wilson*, 550 F.3d 270, 282 (3d Cir. 2008). But there are

exceptions. *Id.* (holding that "it is an unreasonable application of clearly established Federal law under the decisions of the Supreme Court of the United States to hold that [the] use [of generic terms] *always* will be sufficient" to satisfy *Bruton* (emphasis added and internal quotation marks omitted)). This case exemplifies the exception.

First, the State did not completely redact Sitton's name from Schafer's statements. *Cf. Marsh*, 481 U.S. at 211 (finding no Confrontation-Clause violation when a confession was redacted to remove "not only the defendant's name, but any reference to his or her existence"). This is problematic, because mentioning Sitton at all put him into Schafer's "story" of the murder and made it more likely that the jury would understand generic terms like "somebody" and "the other person" to reference Sitton. The following exchange provides an example:

> Q. Did [Schafer] tell you at this point that she and *Will* had been in a dating relationship for two months?
>
> A. Yes.
>
> Q. That she started dating *him* after she had moved into the [victim's condo]?
>
> A. Yes.
>
> Q. That *he* would actually come and visit her there quite often?
>
> A. Yes.
>
> Q. Spend the night sometimes?
>
> A. Yes.
>
> Q. Did she tell you that she would be trying to cook at the condo and [the victim] would come make a pass at her, put his hand on her butt, and that was unacceptable to her?
>
> A. Yes.

Q. Did she tell you that she had told *somebody* about that?

A. Yes.

(Emphases added). In this exchange, Sitton's first name was used and his relationship with Schafer emphasized only a few questions before the generic term "somebody" is used to refer to the person Schafer told about the victim's sexual advances. This sequence invited jurors to infer that the generic term was being used as a placeholder for Sitton's name, making it likely that jurors would fill his name in throughout the rest of the statements. *See Washington v. Pa. Dep't of Corr.*, 801 F.3d 160, 167 (3d Cir. 2015) (finding a *Bruton* violation where a statement was redacted to replace a defendant's name with "the driver" because it was clear "the driver" was being used as a label to describe defendant).

Second, the manner in which the prosecutor elicited Schafer's statements through the detective's testimony exacerbated the problems with the inadequate redactions. In several instances, the prosecutor used Sitton's name immediately before or after eliciting testimony that recounted Schafer's statements about the murder. For example:

Q. Did [Schafer] admit that she got a cut in the kitchen in the condo on the 29th and was bleeding?

A. Yes.

Q. Did she tell you that she thought Will was going to ask her to marry him after he got a ring?

A. Yes.

Q. Did she tell you that Will had mentioned at one point that he wanted a laptop?

A. Yes.

A. Did she tell you that she saw violence?

Q. Yes.

SUPREME COURT
OF
NEVADA

(O) 1947A

5

Q. And the conversation that she saw violence was specifically in the condo on the 29th, just so we're clear; correct?

A. Yes.

Any juror who heard the prosecutor pivot from discussing the day of the murder ("the 29th") to discussing Sitton ("Will") would likely infer that the subjects were related, especially when the prosecutor elicited Schafer's statement that Sitton wanted a laptop and then later elicited Schafer's statement that a laptop was taken from the victim. And to the extent jurors did not immediately draw that inference, the prosecutor drove the point home by eliciting testimony that after Schafer said "somebody" killed the victim, the detective sent police officers to find Sitton. This method of questioning is the kind the Supreme Court identified as problematic in *Gray*, because it "eliminated all doubt" as to whether the nontestifying codefendant had shared incriminating information about the defendant. 523 U.S. at 194-95.

In determining whether a defendant's confrontation right was violated by admission of a nontestifying codefendant's statements, "the central question is whether the jury likely obeyed the court's instruction to disregard the statement in assessing the defendant's guilt." *Ducksworth v. State*, 114 Nev. 951, 955, 966 P.2d 165, 167 (1998). In other words, could the jury "reasonably be expected to compartmentalize the evidence as it relates to separate defendants?" *Lisle v. State*, 113 Nev. 679, 689, 941 P.2d 459, 466 (1997) (internal quotation marks omitted). We are convinced that the jury could not reasonably be expected to have done so here for all of the reasons stated above. We also conclude that this error, whether standing alone or considered with the district court's failure to sever the trial, was not harmless. This was not a case where the evidence against the defendant

was overwhelming. Robert's credibility was suspect without the corroboration offered by Schafer's statements, and the other evidence against Sitton was arguably consistent with his defense that Robert committed the murder. Because the State fails to demonstrate that the errors did not contribute to the verdict beyond a reasonable doubt, *see Valdez v. State*, 124 Nev. 1172, 1189, 196 P.3d 465, 476 (2008), we

ORDER the judgment of the district court REVERSED AND REMAND for a new trial.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver


HARDESTY, J., concurring:

I agree with the court's decision to reverse the judgment of conviction and remand for a new trial. Unfortunately, this is just one in a growing list of cases where this court has reversed a judgment of conviction based on Judge Smith's failure to follow well-established law.[2] Most

---

[2]*See, e.g., Brass v. State*, 128 Nev. 748, 291 P.3d 145 (2012) (reversal based on failure to comply with *Batson v. Kentucky*, 476 U.S. 79 (1986)); *Perez v. State*, Docket No. 60743 (Order Reversing and Remanding, February 13, 2013) (reversal based on failure to comply with *Cripps v. State*,

SUPREME COURT
OF
NEVADA

(O) 1947A

122 Nev. 764, 137 P.3d 1187 (2006)); *Orellana v. State*, Docket No. 56438 (Order Reversing and Remanding, March 28, 2013) (reversal based on failure to comply with *Batson*); *Simmons v. State*, Docket No. 58016 (Order Reversing and Remanding, September 26, 2013) (reversal based on failure to give adequate consideration to claim that defendant's constitutional rights were being violated and abuse of discretion in using "lottery" system to select alternate jurors); *Williams v. State*, Docket No. 59741 (Order Reversing and Remanding, September 26, 2013) (reversal based on failure to comply with *Faretta v. California*, 422 U.S. 806 (1975) and SCR 253); *Bowman v. State*, Docket No. 61801 (Order Reversing and Remanding, March 12, 2014) (reversal based on refusal to allow juror to ask a valid question); *Black v. State*, Docket No. 63880 (Order Reversing and Remanding, April 10, 2014) (reversal based on failure to comply with *Cripps*); *Wiesner v. State*, Docket No. 64373 (Order Reversing and Remanding, September 18, 2014) (reversal based on denial on motion for self-representation that relied on ground rejected in *Vanisi v. State*, 117 Nev. 330, 22 P.3d 1164 (2001)); *Barral v. State*, 131 Nev., Adv. Op. 52, 353 P.3d 1197 (2015) (reversal based on refusal to administer statutorily mandated oath before jury selection); *Sperke v. State*, Docket No. 67319 (Order Reversing and Remanding, October 13, 2016) (same); *Bradford v. State*, Docket No. 62108 (Order Reversing and Remanding, October 24, 2017) (reversal based on improper dismissal of veniremembers before *Batson* hearing); *Williams v. State*, 134 Nev., Adv. Op. 83, 429 P.3d 301 (2018) (reversal based on failure to engage in step three of *Batson* analysis); *Salazar v. State*, Docket No. 68403 (Order Reversing and Remanding, January 24, 2018) (reversal based on refusal to administer statutorily mandated oath before jury selection); *Miranda-Cruz v. State*, Docket No. 70960 (Order Reversing and Remanding, December 28, 2018) (reversal based on cumulative error that included admitting preliminary hearing testimony based on an untimely motion that did not include a necessary affidavit and did not establish that the witness was unavailable; failing to administer statutorily required oaths before jury selection and before a child testified; and failing to administer a statutorily required admonishment before a break); *Cazares v. State*, Docket No. 71728 (Order Affirming in Part, Reversing in Part, and Remanding, January 4, 2019) (reversing in part based on failure to properly instruct on elements of felony coercion and noting multiple errors during jury selection); *see also Flowers v. State*, Docket No. 70933 (Order Reversing and Remanding, July 12, 2017)

SUPREME COURT
OF
NEVADA

(O) 1947A

troubling, Judge Smith tends to repeat the same errors, even after he has been informed of the nature of the error.[3] This pattern not only increases the burden on a criminal justice system that is already pushed to its limits, it delays justice and in many instances forces crime victims and their family members to sit through repeated trials during which they must relive the worst moments of their lives.

_____, J.
       Hardesty

cc:    Department 8, Eighth Judicial District Court
       Law Office of Christopher R. Oram
       Oronoz & Ericsson, LLC
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

---

(discussing Judge Smith's apparent violation of *Cripps* and likelihood of success on claim that appellate counsel should have raised the issue on direct appeal).

[3]For example, in *Barral, Moran, Salazar,* and *Sperke,* cited supra note 1, Judge Smith did not give the statutorily mandated oath before jury selection. He made the same error in other cases, but this court did not reverse because the defendant had not objected at trial and had not demonstrated prejudice on appeal. *See, e.g., Owens v. State,* Docket No. 71532 (Order of Affirmance, June 8, 2018); *Washington v. State,* Docket No. 67445 (Order of Affirmance, July 20, 2018). And in *Brass, Williams, Orellana,* and *Bradford,* cited supra note 1, Judge Smith failed to comply with *Batson v. Kentucky,* 476 U.S. 79 (1986).